(84 South. 628)

ARMOUR & CO. v. ALABAMA POWER CO.
(7 Div. 587.)

(Court of Appeals of Alabama. Nov. 11, 1919. On Rehearing, Dec. 16, 1919.)

1. PLEADING ☞11—STREET RAILROADS ☞110(1)—COMPLAINT ALLEGING WILLFUL AND WANTON INJURY SUFFICIENT.

A complaint alleging that the running of a street car against an automobile was willful and wanton is sufficient, and need not set out the evidence that the act was wanton or willful.

2. STREET RAILROADS ☞104—CONTRIBUTORY NEGLIGENCE NO JUSTIFICATION FOR WANTON INJURY.

Contributory negligence on the part of a motorist will not justify intentional or wanton injury or negligence on the part of those in charge of street car.

3. TRIAL ☞56—SUSTAINING OBJECTION TO QUESTION ALREADY ANSWERED NOT ERROR.

The sustaining of an objection to question which had already been answered without objection is not error.

4. TRIAL ☞139(1) — GENERAL CHARGE SHOULD NOT BE GIVEN WHEN THERE IS ANY EVIDENCE OR REASONABLE INFERENCE IN OPPOSITION.

The general affirmative charge should never be given whenever there is any evidence or reasonable inference in opposition to the same.

5. TRIAL ☞143—WHERE EVIDENCE IS CONFLICTING, THE GENERAL CHARGE SHOULD NOT BE GIVEN.

Where the evidence is conflicting, the general charge should not be given.

On Rehearing.

6. STREET RAILROADS ☞103(3) — SUBSEQUENT NEGLIGENCE AS TO NEGLIGENT AUTOMOBILE DRIVER DEFINED.

Notwithstanding the negligence of the driver of plaintiff's automobile, the street railway is liable if its motorman, after discovering the automobile's position of peril, failed to use the highest degree of care to avoid injury.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. TRIAL ⬩28(3)—INSPECTION OF INJURED AUTOMOBILE PROPER.**

In an action for injuries to an automobile struck by a street car, where the evidence was conflicting, it was not error to allow the jury to inspect and view the automobile, the injuries on which showed point of contact.

**8. STREET RAILROADS ⬩85(4)—AUTOMOBILE AND STREET CAR HAVE EQUAL RIGHTS.**

An automobile truck and street car have equal rights to the street and use thereof at an intersection and the operator of the street car owes a duty to avoid a collision.

**9. STREET RAILROADS ⬩117(35) — SUBSEQUENT NEGLIGENCE AS AUTOMOBILE DRIVER HELD QUESTION FOR JURY.**

In an action for injuries to an automobile truck, struck by a street car, negligence of motorman after discovery of the position of peril of automobile held a question for the jury.

**10. TRIAL ⬩143 — NO PREPONDERANCE OF CONFLICTING TESTIMONY CAN JUSTIFY WITHDRAWAL OF CASE FROM JURY.**

No preponderance of conflicting testimony, however great, can justify the withdrawal of a disputed question of fact from the jury by a general affirmative charge.

**11. STREET RAILROADS ⬩93(4) — MOTORMAN MAY PRESUME PERSONS WILL AVOID DANGER.**

Street car motorman may, until the contrary becomes apparent, presume that persons in street are possessed of their faculties, and will exercise them to avoid the approaching car.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

Action by Armour & Co. against the Alabama Power Company for damages to an automobile in a collision with a street car. Judgment for defendant, and plaintiff appealed. Reversed and remanded.

Count 2 of the complaint is as follows:

The plaintiff claims of the defendant the sum of $200 as damages for that, whereas, on or about, to wit, the 7th day of July, 1916, the defendant, through its agent or agents, or servant or servants, was operating a street car by means of electricity upon a railway over and along one of the public streets in the city of Anniston, Ala., to wit, Fifteenth street at or near its intersection with Cooper avenue in said city, for the transportation of passengers for hire or reward, and plaintiff avers that on said date and occasion and at such place its servant or agent was traveling along said street in an automobile, the property of the plaintiff, and was rightfully using said street at the time and place aforesaid. And plaintiff avers that, while its agent was thus using the said street, the said agent or agents, servant or servants, of the defendants, acting within the line and scope of his or their authority, "wantonly, willfully, or intentionally" caused or allowed said street car to collide with said automobile, which was being so driven by the said agent of this plaintiff, with great force and vio-

lence, and as a proximate consequence thereof the plaintiff's said automobile was torn up, broken, and wrecked, resulting in its damage to an extent of $200; hence this suit.

The demurrers filed were as follows:

(1) It does not appear how defendant's servant could be guilty of willfully allowing a car to strike the automobile of plaintiff.

(2) No facts are stated showing that defendant's agents or servants were guilty of wantonly or willfully or intentionally injuring plaintiff.

(3) To willfully allow said car to strike plaintiff's automobile would not be actionable.

The other facts sufficiently appear from the opinion of the court.

Ross Blackmon, of Anniston, for appellant.

The complaint was sufficient. 183 Ala. 355, 61 South. 79; 153 Ala. 171, 44 South. 1019; 117 Ala. 367, 23 South. 231; 114 Ala. 587, 22 South. 169; 183 Ala. 346, 61 South. 77. Pleas of contributory negligence are not answers to willful counts. 179 Ala. 152, 59 South. 584. The court erred in giving the affirmative charge for the defendant. 2 Ala. App. 649, 57 South. 50; 158 Ala. 38, 48 South. 490; 144 Ala. 316, 39 South. 374; 177 Ala. 468, 59 South. 164.

Knox, Acker, Dixon & Sterne, of Anniston, for appellee.

The defendant was entitled to the affirmative charge under the evidence. 172 Ala. 560, 55 South. 218; 141 Ala. 195, 37 South. 452; 3 Ann. Cas. 333; 166 Ala. 572, 52 South. 311; 198 Ala. 124, 73 South. 439; 192 Ala. 392, 68 South. 277; 196 Ala. 133, 72 South. 67.

MERRITT, J. [1] Count 2 of the complaint was good against the grounds of demurrer. Counts claiming damages for wanton or willful acts, are sufficient when they allege that the injury was wantonly or willfully inflicted by running a train, car, or engine against plaintiff or his property, and it is not essential that they set out the evidence necessary to show that the given act was wanton or willful. Birmingham R., L. & P. Co. v. Johnson, 183 Ala. 355, 61 South. 79; Southern R. R. Co. v. Weatherlow, 153 Ala. 171, 44 South. 1019; Martin's Case, 117 Ala. 367, 23 South. 231; Burgess' Case, 114 Ala. 587, 22 South. 169; Southern R. R. Co. v. Hyde, 183 Ala. 346, 61 South. 77.

[2] The demurrer to pleas A and B should have been sustained. Pleas of contributory negligence do not constitute legal justification for the intentional or wanton injury or negligence of the defendant.

[3] There was no error in sustaining defendant's objection to the question propounded to the witness J. M. Bagley, "You say that all indications showed that it was a

side sweep?" This witness had already testified to exactly this fact without objection. Neither was there error in allowing the witness Taylor to answer the question, "Suppose a man coming down in an automobile intended to turn out that way?" This was on cross-examination in rebuttal of the witness' testimony as to custom.

[4, 5] We are of the opinion that the trial court was in error in giving the general affirmative charge at the request of the defendant. While the testimony is without conflict in many respects, yet there were diverging tendencies which should have been left to the jury to pass upon. The general affirmative charge should never be given whenever there is any evidence or a reasonable inference in opposition to the same. John v. Birmingham Realty Co., 172 Ala. 604, 55 South. 801; Birmingham Light & Power Co. v. Livingston, 144 Ala. 316, 39 South. 374; Birmingham L. & P. Co. v. Williams, 158 Ala. 381, 48 South. 93.

The opinion of the Court of Appeals in the case of Birmingham R., L. & P. Co. v. Camp, 2 Ala. App. 649, 57 South. 50, is to us conclusive of the proposition that the trial court was in error. If there is any evidence which would support an inference that would hinder the defendant's right to recover, an instruction to find for the defendant if the jury believed the evidence should not be given. W. U. Tel. Co. v. Louisell, 161 Ala. 231, 50 South. 87.

If there is any evidence which tends to establish the plaintiff's cause, the court should not withdraw the case from the jury or direct a verdict. It is not for the court to judge the sufficiency of the evidence, or to decide which of conflicting tendencies of the evidence should be adopted by the jury. Tobler v. Pioneer Mfg. Co., 166 Ala. 517, 52 South. 86; Amerson v. Corona Coal & Iron Co., 194 Ala. 175, 69 South. 601.

The reporter will set out fully all the facts in the case.

The judgment of the circuit court will be reversed and remanded.

Reversed and remanded.

On Rehearing.

We have given the most careful consideration to the insistence of the appellee in its able brief and argument that the action of the trial court should be upheld in the giving of the affirmative charge, but we are unable to arrive at any other conclusion than that stated in the opinion that, "while the testimony is without conflict in many respects, yet there were diverging tendencies which should have been left to the jury to pass upon."

[6] Under the first count of the complaint alleging negligence in general terms, it was permissible to prove subsequent negligence, and if the defendant's motorman, after dis-

covering the plaintiff's peril failed to use the highest degree of care to avoid injuries, it would be guilty of subsequent negligence. L. & N. R. R. Co. v. Calvert, 170 Ala. 571, 54 South. 184; L. & N. R. R. Co. v. Abernathy, 192 Ala. 629, 69 South. 57.

[7-9] The injuries complained of in this case occurred at the intersection of Cooper and Fifteenth streets in the city of Anniston, which was a main street. The defendant's motorman testified that people crossed the street, at the point where the accident occurred, frequently, all of which he admitted was known to him. Defendant's conductor testified that he did not hear the gong on the car sounded; that the motorman was supposed to sound the gong at the crossing where the accident occurred. One version of the accident was that defendant's car was standing still, and that the auto ran into the car, while the plaintiff's contention was that the car ran into the auto. Tending to establish one or the other of these versions, there was considerable testimony as to the point of contact on the car and on the auto, and the trial court rightly permitted the jury to inspect and view the auto. There was testimony on the part of the motorman that when he first saw the auto the street car was standing still, and that the auto was 40 or 50 feet from him. The testimony further tended to show that the motorman on the car could have seen any one approaching the car line over Cooper street, the car line at that point being straight and the view of the motorman being unobstructed. The auto driver testified that the street car did not ring any bell or give any signal; that the speed of the car was not slackened. One witness for plaintiff testified:

"The automobile was knocked about 10 feet back from the way the car was running. The car was running about like all of them do. It didn't stop there. It run about the length of the car after it hit him. There was nothing to have kept the man on the front part of the street car from seeing him."

Under those facts, and others disclosed by the testimony, we cannot but see that the question of negligence, initial and subsequent, should have been submitted to the jury. And again, with the count in charging wanton negligence, which was erroneously held subject to demurrer, it was a question under the evidence, which shows this to have been a public crossing, known to defendant's motorman, where no gong was sounded or signal given, and considering the rate of speed the car was traveling, as to whether or not the motorman was guilty of wanton negligence. It may have been negligent for the plaintiff to have gone upon the track with mud on the isinglass of the auto, so that he could not see out of the side thereof, but it must not be forgotten that both the

street car and auto had equal right to the street and the use thereof, and that there were some duties resting on the motorman. Judge De Graffenried, in the case of Birmingham Ry., L. & P. Co., 3 Ala. App. 375, 57 South. 410, says:

"If a motorman, in charge of a car, sees a vehicle on the track, or dangerously near it, and that the driver is either ignorant of the approach of the car or driving without regard to it, it is the duty of the motorman to so regulate the speed of his car as to be able to immediately stop it, and to actually stop it in time to prevent injury, if that becomes necessary, and, if he fails to do so and damage results by reason thereof, the railway company is liable therefor. In such a case, if the vehicle is on or dangerously near the track through the negligence of the driver, such negligence is a remote, not proximate, cause of the injury; it is but the condition upon which the subsequent negligent act of the motorman or other person in charge of the car operated as the direct, efficient, proximate cause of the injury. We have often held that, if the plaintiff's peril was discovered in time to avoid the injury by the exercise of due care on the part of the defendant, and the injury was the result of its failure to perform its duty in this respect, plaintiff would be entitled to recover, although he may have been guilty of culpable negligence in the first instance.' * * * It is therefore manifest that, if the motorman in charge of appellant's car saw appellee's hack on or dangerously near the track and going in the same direction as the car, that it was a closed hack, and that it was raining at the time, and there was nothing to indicate that the driver of the vehicle was aware of the approach of the car, or if it appeared that he was driving regardless of the fact that the car was approaching, it was the duty of such motorman to have at once reduced the speed of his car and to have placed it under such control that he could at once stop it if necessary. And if the street in which the hack was being driven was too narrow for the car to have passed the hack in safety, then it was the absolute, imperative duty of the motorman, when he discovered the hack in the street, whether the hackman was aware or mindful of the approach of the car or not, to have at once so placed his car under control, and to have so reduced its speed as to have prevented the collision."

It is often said that every case has two sides, and this clearly appears as one of them, but we cannot say that, under the disputed testimony as it was, with conflicting and diverging tendencies, the case was rightly taken from the jury. With conflicting versions as to which ran into the other, and the jury having inspected the auto and seen the point of contact, this, together with the other testimony, which was so in conflict, might have enabled the jury to reconcile one version or the other with this physical fact.

[10, 11] We think what was so well said by Justice Sayre in the case of Appel v. Selma St. & Suburban Ry. Co., 177 Ala. 472, 59 South. 168, might be said as again applicable to the present case. He says:

"Appellee contends that it was entitled to the general affirmative charge, and hence that errors committed were of no consequence. We are unable to take that view of the case. No preponderance of conflicting testimony, however great, can justify the withdrawal of a disputed question from the jury. The questions as to whether and when the motorman took cognizance of the fact that plaintiff was either unaware of his danger or would not make proper effort to take himself out of danger, and as to whether and when the plaintiff became aware of the near approach of the car—all questions of vital importance in determining the issues proposed by the counts averring subsequent negligence on the part of the motorman * * * —the answers to these questions were to be inferred from circumstances of doubtful import, and were properly left to the jury." "The motorman of an electric street car may, until the contrary becomes apparent, rightfully presume that persons in the street are possessed of their faculties, and will exercise them to keep away from danger or stir themselves to avoid the approaching car. Whether after the time for the indulgence of this presumption has passed in any case of this peculiar kind there remains an interval in which effort on the part of the motorman may help to avert injury, and whether during that interval the person in the street becomes conscious of his peril and contributes to his injury by failing in proper effort to save himself, are questions to be determined by the jury on consideration of the surroundings in such detail as probably no pleading can produce."

The application for rehearing is overruled.